## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SIMON ADRIAN ORTIZ CHIRINOS,**

      **Petitioner,**

    **v.**                       **Case No.:  6:26-cv-00219-AGM-NWH**

**LOUIS A. QUINONES, JR.;**
**GARRETT J. RIPA; and**
**KRISTI NOEM;**

      **Respondents.**

_____

## <u>ORDER</u>

Petitioner Simon Adrian Ortiz Chirinos is a Venezuelan national who challenges his ongoing detention at the Orange County Jail in Orlando, Florida.  According to his Amended Petition, he was "arrested by the Orange County Sheriff's Office on the stated basis that he was allegedly 'undocumented.'" (Doc. # 4 at 2; the "Petition").  Providing the Court with nothing in the form of legal authority or competent evidence to support the contention and instead providing documentation that could be construed as standing for a *contrary* proposition, Mr. Chirinos nevertheless claims that he is lawfully present in the United States and his detention is unlawful.  (*Id.* at 2).

Mr. Chirinos demands that this Court "immediate[ly] release him" (doc. # 4, p. 2), "[i]ssue a writ of habeas corpus directing Respondents to immediately release" him (*id.*, p. 6), and enter injunctive relief in his favor (*id.*, p. 7).  More specifically, he demands that this Court (1) issue a writ of habeas corpus to immediately release him from custody; (2) enter a temporary restraining order and/or preliminary injunction prohibiting his transfer from

Orange County Jail pending resolution of this action; (3) declare that Mr. Chirinos's detention unlawful; (4) order expedited proceedings under 28 U.S.C. § 2243; and (5) grant such other relief as the Court deems just and proper.  (Doc. # 4 at 5).  As detailed below, Mr. Chirinos has not met the burdens and legal requirements the law imposes on him.  Therefore, the Petition, along with its consolidated request for preliminary injunctive relief, is due to be dismissed.

## I.    LEGAL STANDARD

### A.  Jurisdiction

The Latin term "habeas corpus" literally translates "you shall have the body"[1] and the issuance of the writ orders that the detainee be brought into court so that the legality of the detention may be assessed.  District courts have the power to issue writs of habeas corpus pursuant to 28 U.S.C. § 2241(a).  However, Congress "may 'give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution,'" *University of South Alabama*, 168 F.3d 405, 409 (11th Cir. 2001) (quoting *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 215 (5th Cir. 1998) (en banc)), and, to this end, Congress has statutorily provided that district courts have limited jurisdiction to issue writs of habeas corpus in certain immigration and alien removal contexts.  *See* 8 U.S.C. § 1252(a)(2)(A).

If, in the give-and-take of a complicated statutory scheme enacted by Congress, a trial court ultimately lacks jurisdiction, the court cannot allow the litigation to proceed under the guise of a claim that "dress[es] up a claim with legal or constitutional clothing to invoke [its]

---

[1]  Blackstone defined the writ of habeas corpus as a writ "directed to the person detaining another, and commanding him to produce the body of the prisoner with the day and cause of his detention."  3 W. Blackstone, Commentaries on the Laws of England 131.

jurisdiction." *Camarena v. Director, Immigration & Customs Enforcement*, 988 F.3d 1268, 1274 (11th Cir. 2021) (quoting *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020)). And while the Constitution states that "[t]the privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public safety may require it," U.S. Const. art. I, § 9, cl. 2, "[t]he writ of habeas corpus known to the Framers was quite different from that which exists today," *Felker v. Turpin*, 518 U.S. 651, 663 (1996), and if a writ was not available as the writ was understood in 1789, the unavailability of it today does not violate the Suspension Clause. *Jones v. Hendreix*, 8 F.4th 683, 689–90 (8th Cir. 2021) ("Further, considering that the Suspension Clause refers to a specific legal instrument that existed at the time, we think there is a good reason to adhere closely to the 1789 meaning."). Claims that are "far outside the 'core' of habeas may not be pursued through habeas." *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (rejecting a habeas petition used to obtain authorization for an alien to remain in a country other than his own, noting that "we have no evidence that the writ as it was known in 1789 could be used to require that aliens be permitted to remain in a country other than their own, or as a means to seek that permission."). Although a habeas court has the power to order the conditional release of an unlawfully-detained person, "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

### B. Habeas Rules

A petition for a writ of habeas corpus is governed by the Rules Governing Section 2254 Cases in the United States District Courts, Pub. L. 94-426 (the "Habeas Rules"). While Rule 1(a) specifies that the Habeas Rules govern a petition filed under 28 U.S.C. § 2254, Rule

1(b) makes clear that a "district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)."

Among other things, Rule 2(c) of the Habeas Rules requires that the petition "specify all the grounds for relief available to the petitioner;" "state the facts supporting each ground;" and "be signed under penalty of perjury by the petitioner or a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." Habeas Rule 2(c)(1), (2), (5).

Habeas Rule 4 requires that the district court "must dismiss the petition and direct the clerk to notify the petitioner" if the district court determines that "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]" And "[i]n every case," Rule 4 requires that the clerk serve a copy of the petition and any order "on the respondent and on the attorney general or other appropriate officer of the state involved." *Id.*

"A prime purpose" of Rule 2(c)'s demand that petitioners plead with particularity is to "assist the district court" in its duties under Rule 4. *Mayle v. Felix*, 545 U.S. 644, 656 (2005). As between Rule 8 of the Federal Rules of Civil Procedure and Rule 2(c) of the Habeas Rules, "Habeas Corpus Rule 2(c) is more demanding." *Id.* at 655.

The Federal Rules of Civil Procedure may be applied to a Habeas proceeding to the extent they are not inconsistent with the Rules or any other statutory provisions. Habeas Rule 12.

### C. Preliminary Injunctive Relief

To receive a preliminary injunction, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the

non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "The balance-of-the-harms and public-interest elements merge when the government is the party opposing the injunctive relief." *Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *17 (11th Cir. Apr. 15, 2022) (citing *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989). A failure to establish any one of these elements warrants denial of injunctive relief. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (vacating a preliminary injunction based solely on plaintiff's failure to establish irreparable injury).

"Litigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party." *Gomez v. United States*, 899 F.2d 1124, 1127 (11th Cir. 1990). Consequently, in considering a request for injunctive relief the Court must assess the remedies available in the underlying action. If the request for injunctive relief seeks a remedy different or greater than the remedy available if the movant were to prevail at the conclusion of an adjudication on the merits, then the request must be denied.

A district court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Trial

courts have discretion to determine the amount of security Rule 65 requires. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005).

### D. Local Rules of the Middle District of Florida

Middle District of Florida Local Rule 6.01 provides that a motion for temporary restraining order "must include" "(1) 'Temporary Restraining Order' in the title; (2) specific facts — supported by a verified complaint, an affidavit, or other evidence — demonstrating an entitlement to relief; (3) a precise description of the conduct and the persons subject to restraint; (4) a precise and verified explanation of the amount and form of the required security; (5) a supporting legal memorandum; and (6) a proposed order."

Local Rule 6.02 provides that a motion for a preliminary injunction "(1) must include 'Preliminary Injunction' in the title but otherwise must comply with Local Rule 6.01(a) and (b) and (2) must include as an attachment each paper on which the movant relies."

## II.    ANALYSIS

### A.  Jurisdiction

"Federal courts are courts of limited jurisdiction and are required to inquire into their jurisdiction at the earliest possible point in the proceeding." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1279–80 (11th Cir. 2001). The party seeking to invoke the Court's jurisdiction bears the burden of proving the existence of federal jurisdiction. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). Not only is it unnecessary for district courts to wait for lack of subject matter jurisdiction to be raised as a defense, it is "axiomatic" that district courts may not passively stand by waiting for the issue to be raised. *See University of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir. 1999). "[B]ecause the Constitution

6

unambiguously confers [] jurisdictional power to the sound discretion of Congress, federal courts 'should proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction.'" *Id.* (cleaned up). The reason why it is necessary for district courts to independently respect the limits of their power is that when a district court acts without subject matter jurisdiction, "it violates the fundamental constitutional precept of limited federal power," "unconstitutionally invades the powers reserved to the states to determine controversies in their own courts," and "offends fundamental principles of separation of powers." *Id.* at 410.

Doubt as to the existence of its jurisdiction may arise from a trial court's examination of the face of the pleading and the attached exhibits. *See McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). If the court determines that the face of the petition and the exhibits attached fail to allege a sufficient basis for subject matter jurisdiction, the district court is authorized to dismiss the petition. *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

Here, on review of the Petition and the attached exhibits, Mr. Chirinos has failed to satisfy the Court that it has jurisdiction to issue the writ. In matters relating to immigration and alien removal proceedings, Congress "may 'give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution,'" *University of South Alabama*, 168 F.3d at 409 (quoting *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 215 (5th Cir. 1998) (en banc)), and, in the context of immigration and alien removal proceedings, it is abundantly clear that Congress has done precisely that. In its judgment, Congress has (1) granted district the power to issue writs of habeas corpus generally yet also

(2) specifically denied district courts the power to issue a writ in certain contexts relating to immigration and alien removal. The petitioner in a case such as this one must plead the inapplicability of the jurisdiction-stripping provisions of the Immigration and Nationality Act, which expressly provide that district courts do not have jurisdiction to issue a writ of habeas corpus in certain contexts even when 28 U.S.C. § 2241 otherwise applies. *See, e.g.*, 8 U.S.C. § 1252(a)(2)(A) (providing that "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, … no court shall have jurisdiction to review" enumerated claims arising from or relating to expedited removal under 8 U.S.C. § 1225(b)(1), except as provided in § 1252(e)). Since the Petition fails to meet these jurisdictional requirements, the Court's jurisdiction is in doubt and dismissal is warranted. *See also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("[A] court may not in any case, even in the interest of justice, extend its jurisdiction where none exists[.]").

### B. Habeas Rules

Even if the Petition adequately alleged the existence of subject matter jurisdiction (and it did not, for the reasons identified above), the Petition is due to be dismissed because in various other respects it fails to comply with federal law.

### 1. Failure to Comply with Pleading Standards

Whether examined under the Federal Rules of Civil Procedure or the Habeas Rules, the Petition fails to comply with requisite pleading standards. If examined under the Habeas Rules, the Petition notably fails to meet the requirements of Rule 2(c). It does not "specify all grounds for relief available to the petitioner" or "state the facts supporting each ground." And while it is technically verified by Mr. Chirinos's counsel, from the careful wording of the

verification the Petition is clearly *not* derived from the personal knowledge of the attorney who verified it.[2]

The screening function the Court is required to take under Rule 4 states that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief . . . the judge must dismiss the petition[.]"  The Petition here demands that this Court take the extraordinary step of directing the work of a different branch of government; it does so with assertions that are simply not supported (if not outright contradicted) by the exhibits attached.

In support of these allegations, Mr. Chirinos attached to his Petition a copy of his Temporary Florida Driver License, without explaining how the State of Florida could, as a matter of law, confer immigration status on him by issuing a Temporary Florida Driver License.  He attached what appears to be a photograph of a Venezuelan passport, again without explaining how a Venezuelan passport is evidence that he is lawfully present in the United States.  He attached an I-797 Notice of Action, which merely attests that his application for employment authorization was approved, without attaching the Employment Authorization Document itself; in fact, the attached Notice states: "THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA OR EVIDENCE OF EMPLOYMENT AUTHORIZATION."  (Doc. # 4, at Ex. A).  Mr. Chirinos does not explain how employment authorization confers legal status.  He attached a Form I-797C Notice of Action indicating receipt of someone else's asylum application. On its face, in all capital letters,

---

[2] Even if a petition may be verified without personal knowledge, it is concerning that counsel would elect to proceed in this manner given the gravity of the relief requested and the absence of *any* controlling precedent.

9

this form, too, states that "THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT." *Id.* He attached an I-94 form showing admittance into the United States in 2022, but the form reflects he was only admitted through September 2, 2022. *Id.* These attachments fail to establish, either factually or as a matter of law, that Mr. Chirinos is lawfully present in the United States.

Meanwhile, the Petition leaves out obviously-important details, like the circumstances leading to Mr. Chirinos's detention. It is replete with conclusory assertions. For example, the assertion that an ICE immigration detainer is an administrative request that does not authorize detention. The Petition seemingly suggests that the Court should insert itself without considering the complex framework of immigration law, under which an alien can be detained for a host of reasons, some of which are non-criminal. *See, e.g.*, 8 U.S.C. § 1226(1) (directing the Attorney General to detain an inadmissible alien "charged with, arrested for, convicted of, admits having committed, or admits committing acts which constitute the essential elements of" certain crimes, or "is determined to have communicable diseases of public health significance", who failed to provide the necessary vaccine documentation, has certain mental or physical disorders or history of behavior associated with the disorder, or "who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to be a drug abuser or addict."). Ultimately, "conclusory allegations [and] unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Given that "Habeas Corpus Rule 2(c) is more demanding" than Rule 8 of the Federal Rules of Civil Procedure, *Mayle*, 545 U.S. at 655, it is relevant to note that even if the Habeas

Rules did not apply, the Petition is a shotgun pleading subject to dismissal pursuant to Rule 8. Pleadings that fail under Federal Rules of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four types of shotgun pleadings, all of which share the common defect of failing to give the defendant adequate notice of the claims asserted or the grounds supporting them. *Id.* at 1323. Although "it is much easier in the short term to permit shotgun pleadings . . . instead of intervening *sua sponte* to narrow the issues," "district courts have the power and the duty to define the issues at the earliest stages of litigation" and it is appropriate to "quickly demand repleader" to avoid being "drowned in an uncharted sea," a "massive record," and "loose pleadings." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

Here, the Petition is a shotgun pleading because it lumps the Respondents together in a way that makes it impossible for the Court to determine who Mr. Chirinos alleges did what, and when. *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (explaining a pleading that asserts a claim against multiple defendants "without specifying which of the defendants are responsible for which acts or omissions" is a prohibited shotgun pleading). The Petition names three different individuals but fails to differentiate among them. For example, Mr. Chirinos alleges that "Respondents have indicated intent to transfer Petitioner to ICE custody before this Court can adjudicate the legality of his detention." (Doc. # 4 at 3). Aside from grouping the Respondents together, the allegation itself is vague. While the pleading standard of Rule 8 does not require "detailed factual allegations," it demands more than

"unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted above, the Petition fails to meet the requirements of federal law in multiple respects, each one of which justify dismissal, and the Petition is due to be dismissed for these reasons.

### C. Preliminary Injunctive Relief

While it is evident that the Petition is due to be dismissed for the foregoing reasons, it must be noted that a substantial portion of the Petition is a purported request for preliminary injunctive relief. (See doc. # 4 at 3–5). As of this Order, Mr. Chirinos has not filed a separate motion for temporary restraining order or preliminary injunction under Rule 65, as required by Local Rules 6.01 and 6.02.

### 1. Procedural Failures

As a preliminary matter, two procedural issues would merit the denial of injunctive relief: (1) the relief is not requested in the form of a motion and (2) the verification is insufficient. A preliminary injunction is a remedy, rather than a separate, standalone cause of action. *Alabama v. U.S. Army Corp. of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005). Indeed, Rule 65's reference to a "*motion* for a preliminary injunction" reflects that, while a complaint may demand permanent injunctive relief as a remedy, a preliminary injunction requires that a motion be filed. Fed. R. Civ. P. 65 (emphasis added). This comports with the requirements of the Middle District's Local Rules, as well. *See* Middle District of Florida Local Rule 3.01 (rules for "Motions, Briefs, and Other Legal Memorandums" as separate from

pleading rules); Rules 6.01, 6.02 (additional requirements for motions requesting "Temporary Restraining Order[s]"and "Preliminary Injunction[s]").

Here, Mr. Chirinos has not filed a separate motion for preliminary injunctive relief. Both the Federal Rules of Civil Procedure and the Middle District of Florida Local Rules require that a motion be filed before the Court entertains a request for preliminary injunctive relief. Preliminary injunctive relief is due to be denied on that basis alone.

Local Rule 6.01(a)(2) requires a movant to submit "specific facts — supported by a verified complaint, an affidavit, or other evidence — demonstrating an entitlement to relief[.]" To "verify" something means to "prove [it] to be true; to confirm or establish the truth or truthfulness of; to authenticate"; to "confirm or substantiate by oath or affidavit; to swear to the truth of." *Verify*, Black's Law Dictionary (12th ed. 2024). Here, notably the "verification" offered by Petitioner's counsel (which counsel refers to as a "declaration") is explicitly "based on [counsel's] personal knowledge, my communications with Petitioner, review of jail and immigration records, communications with jail officials and information obtained in the course of representing Petitioner." Perhaps the most helpful aspect of this "verification" is that counsel swears under oath that he is really in no position to say whether much of anything in the Petition is true. While "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction," it should only do so "if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *But see Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). As other jurisdictions have acknowledged, "[i]t is settled that a verification wherein affiant affirms merely that certain facts are, 'true to the best of his

knowledge, information and belief,' means nothing 'more than the affiant *believes* the allegations of the bill to be true, though he has neither knowledge nor information of their truth,' and, 'an affidavit of belief in their truth simply amounts to nothing.'" *Board of Water & Sewer Com'rs of City of Mobile v. Spriggs*, 146 So. 2d 872, 873 (Ala. 1962). In this instance, the form of the verification is clearly not appropriate given the character and objectives of this proceeding. By its own terms, the verification explains that counsel's facts depend on sources that cannot be deemed reliable under these circumstances.

### 2. Substantive Failures

Even if Mr. Chirinos met the preliminary requirements for a Temporary Restraining Order (and he has not), his request must also be denied because it fails to establish the substantive requirements for preliminary injunctive relief.

### a. Likelihood of Success on the Merits

Both (1) for the same reasons that justify dismissal of the Petition and also (2) because the Petition is dismissed, Mr. Chirinos cannot establish a substantial likelihood of success on the merits of his Petition. "Absent a properly-filed complaint, a court lacks power to issue preliminary injunctive relief." *Powell v. Rios*, 241 F. App'x 500, 505 n. 4 (10th Cir. 2007). A complaint is required because "injunctive relief must relate in some fashion to the relief requested in the complaint." *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005). The requested relief cannot "deal[ ] with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997); *see Gomez*, 899 F.2d at 1127 ("Litigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party."). "[F]acts contained in a motion or brief

14

'cannot substitute for missing allegations in the complaint.'" *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016) (quoting *Kedzierski v. Kedzierski*, 899 F.2d 681, 684 (7th Cir. 1990)).

Beyond this, Petitioner has failed to demonstrate a likelihood of success on the merits because he has not provided any controlling authority for the proposition that the requested injunctive relief (1) prohibiting his transfer from one facility to another and/or (2) ordering expedited proceedings is among the remedies available if the writ of habeas corpus were to be issued. Indeed, there are good reasons to question whether such relief is within this Court's authority to grant. Courts have interpreted immigration statutes to mean that district courts *do not* have jurisdiction to enjoin the transfer of detainees from one location to another in other contexts. *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F. 3d 680, 685 (3d Cir. 2011) (recognizing the Attorney General's authority to determine the location of detention and, "therefore, to transfer aliens from one detention center to another"); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (recognizing that the Attorney General has "discretionary power to transfer aliens from one locale to another, as she deems appropriate"); *see also* 8 U.S.C. § 1231.

With the Petition is due to be dismissed for the reasons stated above, Mr. Chirinos cannot establish a likelihood of success on the merits at this stage such that injunctive relief should be granted.[3] As noted here, there is good reason to question whether under the law he could establish a likelihood of success on the merits. Simply looking at the Petition, Mr.

---

[3] With sincere respect for the decisions of fellow inferior court judges, a review of the Petition suggests that it would be beneficial (if not necessary) to explain that a petition that exclusively cites the decisions of other district courts does not establish a substantial likelihood of success on the merits. Citation to precedent that is binding would be of greater assistance.

Chirinos requests the entry of a preliminary injunction that seemingly would grant him relief that is not available in the underlying writ proceeding. The law does not permit this in other contexts and Mr. Chirinos does not explain how it could here. He has not provided any authority for the proposition that the writ would entitle him to an injunction prohibiting his transfer from one place to another. Mr. Chirinos has not even provided controlling authority that demonstrates he would be entitled to release if the petition were granted. Meanwhile, the Supreme Court has stated that release is *not* the "exclusive remedy," nor is it "the appropriate one in every case in which the writ is granted." *Boumediene*, 553 U.S. at 779. In the same vein, Mr. Chirinos has not supplied authority for the proposition that the power to order release necessarily also includes the power to prohibit transfer from one facility to another, and both statutory immigration law and cases interpreting that law suggest it would not. This failure to demonstrate a likelihood of success on the merits was almost certainly exacerbated by the fact that Mr. Chirinos did not request this relief in the form of a motion with a supporting memorandum of law, as required by the Local Rules of the Middle District of Florida.

### b. Irreparable Harm

Petitioner also fails to establish that he will suffer irreparable harm absent injunctive relief. To satisfy this requirement, Petitioner must demonstrate that, unless an injunction is issued, he will suffer an injury that is neither "remote nor speculative, but actual and imminent," and the injury is one that cannot be remedied if a court waits until the end of trial to award relief. *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989)).

With no citation to legal authority, Mr. Chirinos alleges in a conclusory fashion that (1) his loss of physical liberty constitutes irreparable harm as a matter of law and (2) transfer to ICE custody would irreversibly alter Petitioner's custodial status and risk mooting or frustrating this Court's jurisdiction. Notwithstanding the fact that Mr. Chirinos has failed to allege facts sufficient for the Court to conclude that his detention is unlawful, the Motion does not explain why his transfer would cause an actual and imminent injury not compensable post-trial. *See City of Jacksonville*, 896 F.2d at 1285; *Siegel*, 234 F.3d at 1177 ("Plaintiffs also contend that a violation of constitutional rights always constitutes irreparable harm. Our case law has not gone that far, however.").

### c. Balance of Equities and Public Interest

As a matter of law, immigration policy decisions are entrusted to the political branches and courts owe substantial deference to those judgments. *Trump v. Hawaii*, 585 U.S. 667, 703–04 (2018). Particularly where the Petition's failure to comply with federal law and pleading requirements impede the Court's ability to assess the Petition, Mr. Chirinos has not demonstrated that the balance of equities and the public interest weigh in his favor.

### D. Local Rules of the Middle District of Florida

Even if this Court was satisfied that the Petition's request for preliminary injunctive relief was procedurally and substantively sound under the Federal Rules of Civil Procedure (and it is not), the requirements of Local Rules 6.01 and 6.02 are not met. As noted previously, the request was not filed as a separate, standalone motion. It does not include a "precise description of the conduct and the persons subject to restraint." The request altogether *ignores* the security requirement as it fails to include a "precise and verified explanation of the amount

17

and form of the required security." And lastly, it does not include a "supporting legal memorandum" or a "proposed order." The Petition's request for preliminary injunctive relief further fails to comply with Local Rule 6.02 and is due to be denied based on its noncompliance with either rule.

## III.    CONCLUSION

For the foregoing reasons, Mr. Chirinos's Petition must be dismissed.

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1.    Petitioner's Amended Emergency Verified Petition for Writ of Habeas Corpus (doc. # 4) is **DISMISSED**; and

2.    The Clerk is directed to **SERVE** a copy of the petition and this Order on the Respondents, to the extent they are named, and the Attorney General of the State of Florida, pursuant to Rule 4 of the Habeas Rules.

**DONE** and **ORDERED** this 30th day of January, 2026 in Chambers in Orlando, Florida.

ANNE LEIGH GAYLORD MOE
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Petitioner
Respondents, to the extent named
Attorney General of Florida